IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| RICHARD J. SHEFF, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No. 7:23-cv-00307 |
| ) | |
| JEFFERDS CORPORATION d/b/a ) | By: Elizabeth K. Dillon |
| HOMESTEAD MATERIALS HANDLING ) | United States District Judge |
| COMPANY, et al., ) | |
| ) | |
| Defendants. ) | |

**MEMORANDUM OPINION**

Plaintiff Richard J. Sheff brings this action against Jefferds Corporation d/b/a Homestead Materials Handling Company (Homestead) and Crown Equipment Corporation (Crown) alleging that their negligence and breaches of warranty contributed to the workplace injury Sheff sustained on May 13, 2021, while employed by Uttermost Company. Sheff was operating a rider pallet jack that Crown manufactured and Homestead distributed and maintained when the machine purportedly malfunctioned and injured Sheff's leg.

Pending before the court is Homestead's motion to dismiss for failure to state a claim as to Counts I(d), III, and IV of the amended complaint. (Dkt. No. 24.) The court held a hearing on the motion to dismiss, and the matters are fully briefed and ripe for resolution. For the reasons stated below, the court will grant in part and deny in part Homestead's motion to dismiss.

I.  BACKGROUND

This case arises out of a workplace accident on May 13, 2021, at the Uttermost Company's warehouse in Rocky Mount, Virginia. (Pl.'s Am. Compl. ¶¶ 41–44, Dkt. No. 22.) In 2018, Uttermost purchased from Homestead a Crown PE 4500-80 Rider Pallet Jack, serial

1

#10103358, manufactured by Crown. (*Id.* ¶¶ 18–20.) Crown designs, manufactures, assembles, and sells forklifts and pallet jacks for use in industrial, manufacturing, and warehouse operations. (*Id.* ¶ 14.) Homestead acted as Crown's dealer and distributor of forklifts and pallet jacks. (*Id.* ¶ 15.) At all relevant times here, Homestead had an exclusive agreement with Uttermost to make routine visits to the Rocky Mount facility for planned and preventive maintenance of Uttermost's forklifts, rider jacks, and other equipment, and to address parts and service needs for this equipment. (*Id.* ¶ 21.) The agreement required that Homestead perform planned and preventive maintenance on the rider pallet jack four times a year. (*Id.* ¶ 27.)

From the time Uttermost purchased the rider pallet jack through January 15, 2020, Homestead maintained and serviced it quarterly according to the service agreement. (*Id.* ¶ 28.) As part of the routine maintenance on the rider pallet jack, Homestead would remove the machine's motor head bolts and reinstall the bolts upon completion of the maintenance service. (*Id.* ¶ 29.) After January 15, 2020, however, Homestead purportedly never serviced the rider pallet jack in question again, even though Homestead had visited Uttermost's warehouse numerous times to service other machines throughout this period. (*Id.* ¶¶ 31–33.) Homestead allegedly never informed Uttermost of its failure to service the rider pallet jack, and, in turn, Uttermost never informed Sheff of this failure and the safety risks such a failure could potentially cause. (*Id.* ¶¶ 37–39.)

On May 13, 2021, Sheff was operating the rider pallet jack. When Sheff made a right turn into an aisle, the rider pallet jack steering became stuck in the right turn position and Sheff was unable to move the machine. (*Id.* ¶¶ 41–42.) Suddenly, the rider pallet jack slammed into a metal rack. (*Id.* ¶ 43.) Sheff's left leg was crushed between the rider pallet jack and the rack, resulting in what Sheff describes as a "gruesome, open lower leg injury." (*Id.* ¶ 44.) A

subsequent investigation of the accident found that the reason the steering became stuck was that one or more motor head bolts had become loose and partially backed out of their holes, which interfered with the machine's steering.  (*Id.* ¶¶ 45–46.)

Sheff initially filed suit in state court against Homestead and Crown.  (*See* State Court Compl., Dkt. No. 1-1.)  Crown subsequently removed the case, invoking this court's diversity jurisdiction under 28 U.S.C. § 1333, and Sheff filed an amended complaint.  (Notice of Removal, Dkt. No. 1.)  In his amended complaint, Sheff asserts the following claims against Homestead and Crown:

> Count I: Negligence (against both defendants);
> Count II: Breach of Warranty (against both defendants);
> Count III: Negligent Service/Maintenance (against Homestead); and
> Count IV: Negligent Post-Sale Failure to Warn (against Homestead).

(*See* Am. Compl.)  The negligence claim in Count I is further subdivided based on four separate alleged duties of both defendants: (a) not to place an unreasonably dangerous product into the stream of commerce; (b) not to distribute, sell, or place into service a defective Rider Pallet Jack; (c) to adequately and safely design, manufacture, and assemble the Rider Pallet Jack; and (d) to anticipate uses, modifications and/or industrial conditions which would create risks to operators of the Rider Pallet Jack, including the risk of motor head bolt(s) backing out and interfering with the safe operation of the Rider Pallet Jack.  (*Id.* ¶ 53.)

Homestead moves to dismiss Counts I(d), III, and IV.  (Dkt. No. 24.)

## II. LEGAL STANDARD

To survive a Rule 12(b)(6) motion to dismiss, a plaintiff's allegations must "state a claim to relief that is plausible on its face."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007)).  This standard "requires the plaintiff to

articulate facts, when accepted as true, that 'show' that the plaintiff has stated a claim entitling him to relief, i.e., the 'plausibility of entitlement to relief.'" *Francis v. Giacomelli*, 588 F.3d 186, 193 (4th Cir. 2009) (quoting *Twombly,* 550 U.S. at 555). The plausibility standard requires more than "a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678.

"[A] court evaluates the complaint in its entirety," *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 448 (4th Cir. 2011), and in determining whether the plaintiff has met this plausibility standard, the court must accept as true all well-pleaded facts in the complaint and any documents incorporated into or attached to it, *Sec'y of State for Defence v. Trimble Navigation Ltd.*, 484 F.3d 700, 705 (4th Cir. 2007). Further, it must "draw[] all reasonable factual inferences from those facts in the plaintiff's favor," *Edwards v. City of Goldsboro*, 178 F.3d 231, 244 (4th Cir. 1999), but it "need not accept legal conclusions couched as facts or 'unwarranted inferences, unreasonable conclusions, or arguments.'" *Wag More Dogs, LLC v. Cozart*, 680 F.3d 359, 365 (4th Cir. 2012) (quoting *Giarratano v. Johnson*, 521 F.3d 298, 302 (4th Cir. 2008)).

## III.  DISCUSSION

### A. Homestead's Motion to Dismiss Count I(d)

In Count 1(d), Sheff claims that Homestead and Crown owed him "a duty . . . to anticipate uses, modifications, and/or industrial conditions which would create risks to operators of the Rider Pallet Jack, including the risk of motor head bolt(s) backing out and interfering with the safe operation of the Rider Pallet Jack." (Am. Compl. ¶ 53.) Homestead seeks dismissal because it is "not aware of any authority which supports Plaintiff's position" that Homestead had a duty to *anticipate* the uses of the rider pallet jack. (Def.'s Mem. in Supp. of Mot. to Dismiss 3, Dkt. No. 25.) But, as Sheff notes, "Count I is a products liability claim based on negligence."

(Pl's Resp. in Opp'n 8, Dkt. No. 33.)  Indeed, Homestead concedes in its reply that "as the distributor or supplier of the pallet jack, [it] potentially had duties to the Plaintiff under products liability law[.]"  (Def.'s Reply 2, Dkt. No. 34.)

This is a quibble about words.  The language in Count I(d) is simply an enumeration of a manufacturer's or distributor's duties under products liability law.  In particular, Virginia products liability law imposes a duty to not put an unreasonably dangerous product into the market that could potentially cause harm to reasonably foreseeable users while using the product in ordinary or reasonably foreseeable ways.  *See, e.g.*, *Featherall v. Firestone Tire & Rubber Co.,* 252 S.E.2d 358, 367 (Va. 1979); *Logan v. Montgomery Ward,* 219 S.E.2d 685, 687 (Va. 1975).  Just because the phrasing of the complaint in saying a "duty to anticipate" is not the precise wording used in case law to describe a distributor's duty does not mean that it is an inaccurate statement of the law.  Moreover, Count I otherwise identifies valid duties in other subsections, none of which Homestead challenges.  Thus, Count I states a valid claim, and the court will deny Homestead's motion to dismiss Count I(d).

**B. Homestead's Motion to Dismiss Count III: Negligent Service/Repair of the Rider Pallet Jack**

Sheff claims in Count III that Homestead owed him the duty to use reasonable care in the performance of maintenance work on the rider pallet jack, specifically the maintenance of the machine's "motor and steering assembly." (Am. Compl. ¶ 66.)  Sheff further asserts that Homestead assumed this duty by undertaking maintenance on the rider pallet jack upon Uttermost's purchase of the machine.  Homestead counters that the source of duty rule bars this claim because its only duty to maintain the rider pallet jack arises from its contract with Uttermost.

As Judge Cullen of this court recognized recently,

> "[T]ort liability cannot be imposed upon a contracting party for failing to do a contractual task when no common-law tort duty would have required him to do it anyway." *Tingler v. Graystone Homes, Inc.*, 834 S.E.2d 244, 255 (Va. 2019). Therefore, "in order to recover in tort, the duty tortiously or negligently breached must be a common law duty, not one existing between the parties solely by virtue of contract." *Id.* (cleaned up) (quoting *MCR Fed., LLC v. JB&A Inc.*, 808 S.E.2d 186, 193 (Va. 2017)). "Whether a legal duty in tort exists is a pure question of law." *Id.* at 253 (quoting *Brown v. Jacobs*, 768 S.E.2d 421, 424 (Va. 2015).

*White v. Flagship Facility Services, Inc.*, 2023 WL 4420441, at *2 (W.D. Va. July 10, 2023).

In analyzing the source of the duty under Virginia law, courts have determined that "[t]here is no tort liability for nonfeasance, i.e., for failing to do what one has promised to do in the absence of a duty to act apart from the promise made." *Tingler v. Graystone Homes, Inc.*, 834 S.E.2d 244, 256 (Va. 2019) (no tort liability for failure to use proper workmanship and due care when constructing a home). However, there may be tort liability for acts of misfeasance. *See, e.g., Kaltman v. All American Pest Control, Inc.*, 706 S.E.2d 864, 870 (Va. 2011) (affirmative act of using a dangerous pesticide is malfeasance). Given the state of the law, it comes as no surprise that Sheff contends that the amended complaint alleges misfeasance in that Homestead failed to reinstall motor head bolts properly and Homestead contends only nonfeasance is alleged regarding a failure to perform maintenance.

A review of the complaint reveals that Sheff's allegations regarding malfeasance do not rise above a conclusory level. He has only alleged Homestead had a *duty* to properly reinstall the motor head bolts and that Homestead breached this duty. (*See* Am. Compl. ¶¶ 66, 71.) In searching for any further detail regarding these conclusions, the court finds only paragraph 29 of the amended complaint wherein it is alleged that Homestead removed and reinstalled the motor head bolts during maintenance service on the rider pallet jack. Nowhere in the complaint does

6

Sheff allege that Homestead negligently reinstalled the motor head bolts or performed *any* affirmative act that led to Sheff's injury. Rather, Sheff repeatedly alleges and argues that Homestead *failed* to perform. Sheff has therefore failed to allege a plausible cause of action, and the court will grant Homestead's motion to dismiss Count III.

**C. Homestead's Motion to Dismiss Count IV: Negligent Post-Sale Failure to Warn**

In Count IV, Sheff contends Homestead had a post-sale duty to warn of "the risk of harm to persons and property posed by continued operation of the Rider Pallet Jack in 2021 before Sheff's accident" without proper maintenance. (Am. Compl. ¶ 79.) Although the Supreme Court of Virginia has not explicitly adopted a post-sale duty to warn, judges in the Western District of Virginia have predicted that it would likely do so if presented with the issue. *See, e.g.*, *Putman v. Savage Arms, Inc.*, No. 7:17-CV-168, 2019 WL 1007527, at * 9 (W.D. Va. Mar. 1, 2019); *Russell v. Wright*, 916 F. Supp. 2d 629, 650 (W.D. Va. 2013); *Rash v. Stryker Corp.*, 589 F. Supp. 2d 733, 735 (W.D. Va. 2008); *McAlpin v. Leeds & Northrup Co.*, 912 F. Supp. 207, 209–11 (W.D. Va. 1996).

While Homestead concedes that a post-sale failure to warn likely applies to it as a distributor, it contends that this duty only applies to dangers that existed *before* a product leaves a manufacturer's or distributor's hands. *See Logan v. Montgomery Ward & Co.*, 219 S.E.2d 685, 687 (Va. 1975). But Sheff *does* in fact allege that the rider pallet jack was potentially dangerous at the time of its sale. Sheff contends that "Homestead knew or should have known of the safety hazards posed by its own failure to perform planned/preventive maintenance on the Rider Pallet Jack." (Am. Compl. ¶ 34.) The risk of these safety hazards was not *caused by* Homestead's purported failure to maintain the machine but by the innate design of the motor head bolts and the risks those specific parts could pose if not maintained. Sheff has therefore plausibly alleged

7

that the dangers associated with the motor head bolts existed before the rider pallet jack left Homestead's hands. Thus, the court will deny the motion to dismiss Count IV.[1]

## IV. CONCLUSION

For the foregoing reasons, Homestead's motion to dismiss (Dkt. No. 24) will be granted as to Count III and denied as to Counts I(d) and IV. An appropriate order will be entered.

Entered: December 1, 2023.

/s/ Elizabeth K. Dillon
Elizabeth K. Dillon
United States District Judge

---

[1] Regarding any post-sale or distribution duties arising after the product left Homestead's hands, Homestead contends the source of duty rule applies to bar any claim and that such a claim is barred by its status as a repairman for the rider pallet jack. The court will not address these arguments at this time because Sheff has stated a claim in Count IV.